**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTIA DOYLE, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>BEECH-NUT NUTRITION CO.,<br><br>        Defendant. | CASE NO:  1:21-cv-186 (GLS/TWD)<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Mattia Doyle ("Plaintiff") brings this action on behalf of herself and all others similarly situated against Defendant Beech-Nut Nutrition Company ("Beech-Nut" or "Defendant") and alleges the following based upon personal knowledge, as well as the investigation of her counsel.

**INTRODUCTION**

1.      Defendant Beech-Nut Nutrition Company sold purportedly "organic" and "natural" baby food that, in fact, contained harmful levels of heavy metals, including arsenic, mercury, cadmium, and lead. As a recent congressional report from the Subcommittee on Economic and Consumer Policy found, Beech-Nut's baby food products contain significant levels of toxic heavy metals, which can endanger infant neurological development.

2.      Not knowing that Beech-Nut baby food—billed as "organic" and "natural"— contained these harmful ingredients, Plaintiff Mattia Doyle bought Beech-Nut Organics and Beech-Nut Naturals to feed her one-year-old and three-year-old children. If Ms. Doyle had known that the Beech-Nut Baby Foods contained these dangerous ingredients, she would not have purchased Beech-Nut Baby Food to feed her infant children. Because Defendant misrepresented the true nature of the ingredients in its Baby Food when it failed to disclose the presence or risk of dangerous levels of heavy

metals, Ms. Doyle brings this action, individually and on behalf of all others similarly situated, against Defendant Beech-Nut Nutrition Company for breach of express and implied warranties, fraud, fraudulent omission, and violation of consumer protection law.

3.      To stop the sale of Beech-Nut Baby Foods containing dangerous heavy metals to unwitting parents buying food for their babies, Plaintiff seeks an injunction requiring that Defendant stop the sale of its products with these metals, and requiring that Defendant instead test its products so that it can both (1) confirm that ingredients are at safe levels, and (2) disclose those levels to Plaintiff and the consuming public. Plaintiff all seeks monetary relief that restores monies paid for the products to the proposed Class and Sub-Classes.

## JURISDICTION

4.      This Court has jurisdiction over all causes of action asserted herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because at least one member of the Class is of diverse state citizenship from Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds the value of $5,000,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and conducts substantial business in this District and the State of New York through its headquarters, sale of products, and website, and Plaintiff has suffered injury as a result of Defendant's acts in this District.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has its principal place of business in this District in this District and because a substantial part of the events, misrepresentations, and omissions giving rise to this action occurred in, were directed to, and originated in this District.

## PARTIES

7.      Plaintiff Mattia Doyle, a resident of Yorba Linda, California, purchased Defendant's baby foods to feed to her one-year-old and three-year-old children. Plaintiff purchased Beech-Nut Organics (sweet potatoes; carrots; butternut squash; apple; pears; pear, kale, and cucumber; apple, kiwi, and spinach) and Beech-Nut Naturals (carrots; green beans). Plaintiff purchased the baby foods

in 2020 from a ShopRite store in Ramsey, New Jersey, and in 2021 from a Target store in Fullerton, California. Plaintiff saw Defendant's nutritional and quality claims on the packaging, including the "Organics" and "Naturals" representations contained in the very name of the food as well as the "Stage" representations, and "real food for babies," which she relied on in deciding to purchase the Baby Foods. During that time, based on Defendant's omissions and false and misleading claims, warranties, representations, advertisements, and other marketing, Plaintiff was unaware that the Baby Foods contained any level of heavy metals or toxins, and she would not have purchased the food if she had known the truth about the hazardous levels of heavy metals or toxins present in the "Natural[]" and "Organic[]" Baby Foods that Defendant sold at a premium price.

8.      As a result of Defendant's negligent, reckless, and/or knowingly deceptive conduct as alleged herein, Plaintiff was injured when she paid for the Baby Foods that were not as represented. Plaintiff was injured in the amount of the purchase price of the products because the Baby Foods containing dangerous ingredients were not the natural, organic, and safe food she thought she was buying. Restitution of the purchase price is appropriate because even if the Baby Food with dangerous ingredients had some value, the Baby Food with dangerous ingredients is a different product than the safe one she believed she was buying. Plaintiff was further injured because the Baby Food that she purchased has no or *de minimis* value—or a value that was at least less than what she paid for the Baby Food—based on the presence of the alleged heavy metals and/or toxins. Plaintiff was also injured because she paid a premium price for the "Organic[]" and "Natural[]" products that contained high quality ingredients that she reasonably assumed were safe for babies and children to ingest. Plaintiff would not have paid this money had she known that the Baby Foods contained dangerous levels of heavy metals and/or toxins. Damages can be calculated through expert testimony at trial. Further, should Plaintiff encounter the Baby Foods in the future, she could not rely on the truthfulness of the packaging, absent corrective changes to the packaging and advertising of the Baby Foods.

9.      Defendant Beech-Nut Nutrition Company is incorporated in New York. Its headquarters and principal place of business is located at One Nutritious Place, Amsterdam, New York 12010.

10.     Defendant manufactures, markets, advertises, labels, distributes, and sells baby food products under the brand name Beech-Nut throughout the United States, including in this District.

11.     Defendant formulates, develops, manufactures, labels, distributes, markets, advertises, and sells the Baby Food under the baby food name Beech-Nut throughout the United States, including in this District, during the Class Period (defined below). The advertising, labeling, and packaging for the Baby Foods, relied upon by Plaintiffs were prepared, reviewed, and/or approved by Defendant and its agents, and were disseminated by Defendant and its agents through marketing, advertising, packaging, and labeling that contained the misrepresentations alleged herein. The marketing, advertising, packaging, and labeling for the Baby Foods were designed to encourage customers to purchase the Baby Foods, and they and reasonably misled reasonable consumers, including Plaintiff and the Class, into purchasing the Baby Foods. Defendant owns, manufactures, and distributes the Baby Foods, and created, allowed, negligently oversaw, and/or authorized the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Baby Foods. Defendant is responsible for sourcing ingredients, manufacturing the products, and conducting all relevant quality assurance protocols, including testing, for the ingredients and finished Baby Foods.

**FACTUAL ALLEGATIONS COMMON TO ALL CLASS MEMBERS**

**I.      Defendant's False and Misleading Marketing of Its Baby Food**

12.     None of Defendant's Baby Food packaging disclosed that it contained harmful levels of heavy metals and other ingredients. Stated otherwise, nowhere in the labeling, advertising, statements, warranties, or packaging does Defendant disclose that the Baby Foods include or have a high risk of containing dangerous levels of heavy metals or other ingredients that do not conform to the labels, packaging, advertising, and statements.

13.     Instead, as shown in the examples below, Defendant's packaging and labels emphasize that Beech-Nut baby food is natural, organic, with nothing artificial added. By making these assurances that the Baby Food is natural and safe for infant consumption, Defendant warrants, promises, represents, misleads, labels, and advertises that the Baby Foods are free of any heavy metals or unnatural ingredients.

14. Also as shown in the examples below, Defendant also warrants that its Baby Food is safe for babies and infants by making representation about which "Stage" of infant development the Food is appropriate for. For example, Defendant warrants that "Stage 1" food is appropriate for infant consumption "From about four months" and that "Stage 2" food is appropriate for infant consumption "From about 6 months."

A. Beech-Nut Organics—Stage 1



B.   Beech-Nut Organics—Stage 2



C.   Beech-Nut Naturals—Stage 1



### D.  Beech-Nut Naturals—Stage 2



15.     But contrary to Defendant's glaring omissions and misleading claims, the Baby Foods have been shown to contain significant levels of arsenic, cadmium, lead, and/or mercury[1]—all known to pose health risks to humans and particularly infants.

---

[1] Healthy Babies Bright Futures, *What's In My Baby's Food?* (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf (hereinafter, "Healthy Babies Bright Futures Report").

## II.    Beech-Nut Baby Foods Contain Harmful Heavy Metals

16.    Testing[2] has made clear that Beech-Nut Baby Foods contain heavy metals.

### A.  Healthy Babies Bright Futures Finds Heavy Metals in Beech-Nut Baby Foods

17.    In April 2019, Healthy Babies Bright Futures, an alliance of nonprofit organizations, commissioned a national laboratory to test 168 containers of baby food for total recoverable arsenic, lead, cadmium, and mercury, as well as speciated arsenic for a subset of samples.

18.    Eighteen of Beech-Nut's baby food products were tested in this study.

19.    Healthy Babies Bright Futures found that the samples contained heavy metals, including arsenic, lead, mercury, and cadmium.

20.    The researchers who published the Healthy Babies Bright Futures Report on healthybabyfood.org explained the harms these metals and can cause. They explained that arsenic, lead, mercury, and cadmium, four heavy metals found in the Baby Foods, are neurotoxins. Exposures to these four heavy metals "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[3] The four heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[4] Even trace amounts of these heavy metals can alter the developing brain and erode a child's IQ.[5] Arsenic causes potentially irreversible damage, including "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were

---

[2] *See* Healthy Babies Bright Futures Report; *see also* SUBCOMMITTEE ON ECON. AND CONSUMER POLICY, COMM. ON OVERSIGHT AND REFORM, *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury* (Feb. 4, 2021) at 2,
https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (hereinafter, "House Report").
[3] Healthy Babies Bright Futures Report at 13.
[4] *Id.* at 6.
[5] *Id.* at 1.

exposed to arsenic-poisoned milk as infants."[6] According to the Healthy Babies Bright Futures Report, research continues to confirm that exposure to food containing arsenic, lead, mercury, and cadmium poses "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[7]

**B.     A Recent Congressional Report Also Finds Harmful Heavy Metals in Beech-Nut Baby Foods**

21.     A recent congressional report from the Subcommittee on Economic and Consumer Policy of the House Oversight Committee found that Beech-Nut Baby Foods[8] "contain significant levels of toxic heavy metals, including arsenic, lead, cadmium and mercury, *which can endanger infant neurological development*."[9]

22.     The Subcommittee requested documentation from the largest baby food manufacturers in the United States, and the companies that responded (including Defendant) produced their internal testing policies, test results for ingredients/finished products (if the company tested its finished products), and documentation about what the companies did with the ingredients and/or finished products that exceeded their internal testing limits.[10]

23.     Defendant submitted to the Subcommittee its testing policies, test results for 57 ingredients,[11] and its documentation about what it did with the ingredients that exceeded internal testing limits.

---

[6] *Id.* at 13.

[7] *Id.*

[8] The affected Baby Foods include the following: (a) Beech-Nut Rice Single Grain Baby Cereal; (b) Beech-Nut Oatmeal Whole Grain Baby Cereal; (c) Beech-Nut Classic Sweet Carrots; (d) Beech-Nut Organics Carrots; (e) Beech-Nut Naturals Sweet Potatoes; (f) Beech-Nut Classics Sweet Potatoes; (g) Beech-Nut Classics Sweet Peas; (h) Beech-Nut Naturals Butternut Squash; (i) Beech-Nut Organics Pumpkin; (j) Beech-Nut Organics Apples; (k) Beech-Nut Naturals Bananas; (l) Beech-Nut Naturals Beets, Pear & Pomegranate; (m) Beech-Nut Classics Mixed Vegetables; (n) Beech-Nut Breakfast On-the-Go Yogurt, Banana & Mixed Berry Blend; (o) Beech-Nut Organics Sweet Potatoes; (p) Beech-Nut Organics Pears; (q) Beech-Nut Organics Apple Kiwi & Spinach; (r) Beech-Nut Naturals Carrots; (s) Beech-Nut Organics Pear Kale & Cucumber.

[9] House Report at 2.

[10] House Report at 2.

[11] Beech-Nut, *Raw Material Heavy Metal Testing* (Dec. 6, 2019), http://oversight.house.gov/sites/democrats.oversight.house.gov/files/4.xlsx.

24.    The Subcommittee concluded that Defendant used ingredients in its baby food that contained arsenic, lead, and cadmium.[12] The report also stated that "Beech-Nut . . . do[es] not even test for mercury in baby food[,]" though the Subcommittee found that mercury was detected in the baby food made by the only responding company that tested for it.[13]

### C.    The Dangers of the Heavy Metals in Beech-Nut Baby Food Are Well-documented

25.    The findings by the Congressional Subcommittee and Happy Babies Bright Futures are particularly alarming because the Food and Drug Administration ("FDA") and the World Health Organization have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[14]

### i.    *Arsenic*

26.    The Congressional Subcommittee found that Beech-Nut Baby Foods may contain arsenic. The U.S Environmental Protection Agency and the FDA have documented the risks associated with exposure to arsenic and regulated its amount in water, juice, and in rice cereals for infants. Specifically, based on the risks associated with exposure to arsenic, the EPA and the FDA have set standards for the allowable limit of arsenic at 10 parts per billion ("ppb") in drinking water,[15] bottled water,[16] and apple juice[17] intended for human consumption. The FDA has also set the action level for inorganic arsenic in rice cereals for infants to 100 ppb.[18] Defendant uses ingredients that exceed these amounts.

---

[12] House Report at 3.
[13] *Id.*
[14] House Report at 2.
[15] 40 C.F.R. § 141.62 (2021).
[16] 21 C.F.R. § (2021).
[17] U.S. FOOD & DRUG ADMIN., *Draft Guidance for Industry, Arsenic in Apple Juice: Action Level* (July 2013), https://www.fda.gov/media/86110/download.
[18] U.S. FOOD & DRUG ADMIN., *Inorganic Arsenic in Rice Cereals for Infants: Action Level Guidance for Industry* (Aug. 2020),

27.     Beech-Nut set an internal specification limit of 3,000 parts per billion inorganic arsenic for certain ingredients and, as a result, used ingredients "with as much as 913.4 ppb arsenic" and "routinely used ingredients that exceeded 300 ppb total arsenic[.]"[19]

### ii.     *Lead*

28.     The Congressional Subcommittee also found that the Baby Foods may contain lead, a known neurotoxin and human carcinogen.

29.     Lead exposure can seriously harm children's nervous systems and developing brains and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[20]

30.     Because lead can accumulate in the body, even very low levels of exposure can become hazardous over time.[21] Indeed, "[n]o safe level of exposure has been identified."[22] Studies have demonstrated that childhood exposure to lead is strongly linked to an adverse effect on academic achievement.[23] One study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food." A correlation has also been established between lead exposure and Attention Deficit Hyperactivity Disorder.[24] Troublingly, the cognitive effects caused by early childhood exposure to lead appear to be permanent.[25]

---

[19] House Report at 17.
[20] House Report at 11 (citing U.S. FOOD & DRUG ADMIN., *Lead in Food, Foodwares, and Dietary Supplements*, https://www.fda.gov/food/metals-and-your-food/lead-food-foodwares-and-dietary-supplements (last visited Feb. 17, 2021)).
[21] *Id.*
[22] Healthy Babies Bright Futures Report at 13.
[23] House Report at 11.
[24] *Id.* at 12 (citing Gabriele Donzelli et al., *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review*, INT'L J. ENVTL. RES. & PUB. HEALTH (Jan. 29, 2019), www.mdpi.com/1660-4601/16/3/382/htm).
[25] *Id.* at 11.

31.     Although there is no federal standard for lead in baby food, experts, including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports, agree that lead in baby foods should not exceed 1 ppb.[26] The FDA has set the maximum lead level in bottled water to 5 ppb.[27]

32.     In contrast, Defendant set an internal specification limit of 5,000 ppb for lead in certain ingredients, which far surpasses any existing regulatory standard.[28]

33.     The Baby Foods used ingredients containing as much as 886.9 ppb lead and "ingredients with high lead content, including 483 that contained over 5 ppb lead, 89 that contained over 15 ppb lead, and 57 that contained over 20 ppb lead."[29]

34.     Defendant only tested its component ingredients for lead, instead of also testing its finished products. As a result, Defendant sold baby food products containing significant amounts of lead.[30] As a result, Defendant sold baby food products containing significant amounts of lead.[31] The Healthy Babies Bright Futures report indicated that three of the Baby Foods contained more than 20 ppb lead.[32]

### iii.     Mercury

35.     The Baby Foods also may contain mercury,[33] which increases the risk for cardiovascular disease and can cause vision, intelligence, and memory problems for children exposed

---

[26] House Report at 27.
[27] Healthy Babies Bright Futures Report at 16.
[28] 21 C.F.R. § 165.110(b)(4)(iii)(A) (2021).
[29] House Report at 38.
[30] House Report at 22.
[31] House Report at 22.
[32] Healthy Babies Bright Futures Report at 19-28.
[33] *See* House Report at 33 (noting that Beech-Nut does not test its ingredients or finished products for mercury); Healthy Babies Bright Futures Report at 19-28 (independent test results showing that Beech-Nut products contain some levels of mercury).

in utero. Exposure to mercury has been linked to higher risk of lower IQ scores and intellectual disability.[34]

36.    Recognizing the harm caused by ingestion of mercury, EPA has set the maximum mercury level in drinking water to 2 ppb.[35]

37.    Defendant does not test its ingredients or finished products for mercury.[36]

*iv.    Cadmium*

38.    The Baby Foods may also contain cadmium,[37] which has been observed to cause anemia, liver disease, and nerve or brain damage in animals that consume it.

39.    Cadmium is linked to neurotoxicity, cancer, and kidney, bone, and heart damage.[38] Scientists have reported a "tripling of risk for learning disabilities and special education among children with higher cadmium exposures, at levels common among U.S. children[.]"[39] Cadmium also "displays a troubling ability to cause harm at low levels of exposure."[40] The U.S. Department of Health and Human Services has determined that cadmium and cadmium compounds are known human carcinogens and the EPA has likewise determined that cadmium is a probable human carcinogen.[41]

---

[34] Healthy Babies Bright Futures Report at 14.
[35] 40 C.F.R. § 141.62(b).
[36] House Report at 3.
[37] *See* House Report at 37.
[38] Healthy Babies Bright Futures Report at 14.
[39] *Id.*
[40] Healthy Babies Bright Futures Report at 14.
[41] ATSDR, DEP'T OF HEALTH AND HUMAN SERV., *Public Health Statement: Cadmium* (Sept. 2012), https://www.atsdr.cdc.gov/toxprofiles/tp5-c1-b.pdf.

40.     The EPA and FDA have set the standards for the allowable limit of cadmium in drinking water[42] and bottled water[43] at 5 ppb. The WHO has established a maximum amount of cadmium in drinking water at 3 ppb.[44]

41.     Defendant set an internal specification limit of 3,000 ppb for cadmium in certain ingredients, surpassing any existing regulatory standard.[45]

42.     The Subcommittee on Economic and Consumer Policy concluded that Defendant used "105 ingredients that tested over 20 ppb cadmium" in its products, with some testing up to 344.55 ppb cadmium.[46]

43.     Additionally, Defendant sold eleven products surpassing its own internal cadmium limits.[47]

44.     Despite the known risks of exposure to these heavy metals, Defendant has negligently, recklessly, and/or knowingly sold the Baby Foods without disclosing they may contain arsenic, mercury, cadmium, and lead to consumers like Plaintiff.

45.     Given the well documented dangers of the heavy metals that may be in the Baby Foods, reasonable consumers, like Plaintiff, would consider the mere presence or risk of heavy metals as a material fact in considering what baby food products to purchase.

46.     Defendant claims on its website that it tests its foods "for up to 255 pesticides and heavy metals (like lead, cadmium, arsenic and other nasty stuff)." As such, Defendant knew or should have known that the Baby Foods contained or had a risk of containing dangerous levels of heavy

---

[42] 40 C.F.R. § 141.62(b).
[43] 21 C.F.R. § 165.110(b)(4)(iii)(A).
[44] WORLD HEALTH ORGANIZATION, *Cadmium in Drinking Water* (2011), https://www.who.int/water_sanitation_health/water-quality/guidelines/chemicals/cadmium.pdf?ua=1.
[45] House Report at 38.
[46] *Id.* at 3.
[47] [47] *Id.* at 38.

14

metals. Additionally, Defendant knew or should have known that its ingredients, and the final products, could contain materials such as toxins and heavy metals. Yet, Defendant did not test all ingredients and finished products, including the Baby Foods, for such materials.

47.     Additionally, Defendant knew or should have known that Plaintiff and other consumers would feed the Baby Foods multiple times each day to her child, making it the primary source of food for her child. This necessarily leads to repeated exposure of heavy metals to the child.

48.     Defendant knew or should have expected that the presence or risk of heavy metals in its Baby Foods is a fact that an average consider would consider when purchasing baby food.

49.     As a result of these false or misleading statements and omissions, Defendant has generated substantial sales of the Baby Foods.

50.     Plaintiff brings this action individually and on behalf of all other similarly situated consumers who purchased the Baby Foods, in order to cause the disclosure of the presence or risk of heavy metals that pose a known risk to infants in the Baby Foods, to correct the false and misleading perception Defendant has created in the minds of consumers that the Baby Foods are high quality, safe, and healthy, and to obtain redress for those who have purchased the Baby Foods.

## CLASS ACTION ALLEGATIONS

51.     Plaintiff brings this action individually and on behalf of the following Classes pursuant to Rules 23(a) and 23(b)(2) and (3) of the Federal Rules of Civil Procedure:

All persons in the United States who, from January 1, 2017, to the present, purchased Beech-Nut Baby Foods for household or personal use (the "Class").

52.     Plaintiff also brings this action individually and on behalf of the following California-Sub Class:

All persons who, from January 1, 2017, to the present, purchased the Baby Foods for household or business use in the State of California (the "California Sub-Class").

53.     Plaintiff also brings this action individually and on behalf of the following New Jersey Sub-Class:

All persons who, from January 1, 2017, to the present, purchased the Baby Foods for household or business use in the State of New Jersey (the "New Jersey Sub-Class").

54.     Excluded from the Class and Sub-Class are the Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all government entities, and any judge, justice, or judicial officer presiding over this matter.

55.     This action is brought and may be properly maintained as a class action.

56.     The members in the proposed Class are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of the members of the proposed Class in a single action will provide substantial benefits to the parties and Court.

57.     Questions of law and fact common to Plaintiff and members of the Classes include, but are not limited to, the following:

   A.   Whether Defendant wrongfully represented and continues to represent that the Baby Foods are natural and safe for human infant consumption;

   B.   Whether Defendant wrongfully represented and continues to represent that the Baby Foods are healthy, superior quality, nutritious, and safe for consumption;

   C.   Whether Defendant wrongfully represented and continues to represent that the Baby Foods are natural;

   D.   Whether Defendant wrongfully represented and continues to represent that the Baby Foods appropriate are appropriate for consumption by various "Stage[s]" of babies;

   E.   Whether Defendant wrongfully failed to disclose that the Baby Foods contained or may contain heavy metals;

16

F. Whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

G. Whether those representations are likely to deceive a reasonable consumer;

H. Whether a reasonable consumer would consider the presence or risk of heavy metals as a material fact in purchasing baby food;

I. Whether Defendant had knowledge that those representations were false, deceptive, and misleading;

J. Whether Defendant knew or should have known that the Baby Foods contained or may contain heavy metals;

K. Whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

L. Whether a representation that a product is healthy, superior quality, nutritious, and safe for consumption and does not contain arsenic, mercury, cadmium, and/or lead is material to a reasonable consumer;

M. Whether Defendant's representations and descriptions on the labeling of the Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

N. Whether Defendant violated the laws of the State of New Jersey;

O. Whether Defendant violated the laws of the State of California;

P. Whether Defendant breached its implied warranties;

Q. Whether Defendant engaged in unfair trade practices;

R. Whether Defendant engaged in false advertising;

S. Whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

T.   Whether Plaintiff and the members of the Class are entitled to actual, statutory, and punitive damages; and

U.   Whether Plaintiff and members of the Class are entitled to declaratory and injunctive relief.

58.   Common issues predominate here where Defendant engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs individually and on behalf of the other members of the Classes. Identical statutory violations, business practices, and harms are involved. Individual questions, if any, are not prevalent in comparison to the numerous common questions that dominate this action.

59.   Plaintiff's claim is typical of those of the members of the Classes, since all of the claims are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

60.   Plaintiff will fairly and adequately represent and protect the interests of the Class, have no interests incompatible with the interests of the Class, and have retained counsel competent and experienced in class action, consumer protection, and false advertising litigation.

61.   Class treatment is superior to other options for resolution of the controversy because the relief sought for each member of the Classes is sufficiently small such that, absent representative litigation, it would be impractical for members of the Classes to redress the wrongs done to them.

62.   As a result of the foregoing, class treatment is appropriate.

**CLAIMS FOR RELIEF**

**COUNT I**
**Breach of Express Warranty Against Defendant on Behalf of Plaintiff and the Class**

63.   Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64.   Defendant marketed and sold the Baby Foods into the stream of commerce with the intend that the Baby Foods would be purchased by Plaintiff and the Class.

65.     Defendant expressly warranted, advertised, and represented to Plaintiff and the Class that its Baby Foods are:

A.  Natural;

B.  Appropriate for consumption by certain "Stage[s]" of babies; and

C.  "Real food for babies."

66.     Defendant made these express warranties regarding the Baby Foods' quality, ingredients, and fitness for consumption in writing on the Baby Foods' packaging and labels through its website, advertisements, and marketing materials. These express warranties became part of the basis of the bargain that Plaintiff and the Class entered into upon purchasing the Baby Foods.

67.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Baby Food to Plaintiff and the Class. Plaintiff and the Class relied on Defendant's advertisements, warranties, and representations regarding the Baby Foods in deciding whether to purchase Defendant's products.

68.     Defendant's Baby Foods do not conform to Defendant's advertisements, warranties, and representations in that they:

A.  Are not natural or suitable for consumption by human babies; and

B.  Contain or may contain levels of various heavy metals.

69.     Defendant was on notice of this breach as they were aware of the included heavy metals in the Baby Foods and based on the public investigation by the Healthy Babies Bright Futures report that showed its baby food products as unhealthy and containing dangerous levels of heavy metals.

70.     Privity exists because Defendant expressly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were healthy,

natural, and suitable for consumption and by failing to make any mention of heavy metals or other unnatural ingredients.

71.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they purchased Baby Foods that were not only worth less than the price they paid, but they would not have purchased at all had, they known of the risk and/or presence of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

72.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## COUNT II
### Breach of Implied Warranty of Merchantability Against Defendant on Behalf of Plaintiff and the Class

73.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

74.     Defendant is a merchant engaging in the sale of goods to Plaintiff and the Class.

75.     There was a sale of goods from Defendant from Plaintiff and the Class.

76.     At all times mentioned herein, Defendant manufactured or supplied the Baby Foods, and prior to the time the Baby Foods were purchased by Plaintiff and the Class, Defendant impliedly warranted to them that the Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Baby Foods' containers and labels, including that the food was natural, safe, and appropriate for consumption by human infants. Plaintiff and the Class relied on Defendant's promises and affirmations of fact when they purchased the Baby Foods.

77.     The Baby Foods were not fit for their ordinary use (consumption by babies) and did not conform to Defendant's affirmations of fact and promises as they contained or were at risk of containing heavy metals and/or other ingredients or contaminants that do not conform to the packaging.

78.     Defendant breached its implied warranties by selling Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

79.     Defendant was on notice of this breach, as it was aware of the heavy metals included or at risk of being included in the Baby Foods and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby foods were unhealthy, contaminated, and potentially dangerous, as well as the extensive press coverage of the investigation.

80.     Privity exists because Defendant impliedly warranted to Plaintiff and the Class through the warranting, packaging, advertising, marketing, and labeling that the Baby Foods were natural and suitable for consumption by babies, and by failing to make any mention of heavy metals or other unnatural ingredients.

81.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients.

82.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

**COUNT III**
**Fraudulent Misrepresentation Against Defendant on Behalf of Plaintiff and the Class**

83.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

84.     Defendant falsely represented to Plaintiff and the Class that the Baby Foods are:

A.   Natural;

B.   Appropriate for consumption by certain "Stage[s]" of babies; and

C.   "real food for babies."

85.     Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiff and the Class to purchase its Baby Foods.

86.     Defendant knew that its representations about the Baby Foods were false in that the Baby Foods contained or were at risk of containing levels of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

87.     Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted the Baby Foods, Plaintiff's and the Class's reliance on Defendant's misrepresentations was justifiable.

88.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

89.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT IV
## Fraud by Omission on Behalf of Plaintiff and the Class

90.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

91.     Defendant concealed from and failed to disclose to Plaintiff and the Class that their Baby Foods contained or were at risk of containing heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

92.     Defendant had a duty to disclose to Plaintiff and the Class the true quality, characteristics, ingredients, suitability, and risks of the Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of the Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiff and the Class could have reasonably have been expected to learn or discover that the Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing the Baby Foods.

93.     The facts concealed or not disclosed by Defendant to Plaintiff and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase the Baby Foods.

94.     Plaintiff and the Class justifiably relied on Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of the Baby Foods, which is inferior in comparison to Defendant's advertisements and representations of the Baby Foods.

95.     As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they

paid and that they would not have purchased at all had they known of the presence or risk of dangerous levels of heavy metals and toxins.

96.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT V
### Negligent Misrepresentation on Behalf of Plaintiff and the Class

97.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

98.     Defendant had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacturing, marketing, distribution, and sale of the Baby Foods.

99.     Defendant breached its duty to Plaintiff and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiff and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove the Baby Foods from the marketplace or to take other appropriate remedial action.

100.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Baby Foods were not as advertised or suitable for their intended use (consumption by babies) and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) certain Baby Foods were not natural because they contained, or were at risk of containing, levels of perchlorate; (2) the Baby Foods were not nutritious, superior quality, pure, natural, healthy, and safe for consumption because they contained or had a risk of containing levels of heavy metals and/or other unnatural ingredients or contaminants that do not conforming to the packaging; (3) the Baby Foods were adulterated or at risk of being adulterated by heavy metals; and (4) the Baby Foods were otherwise not as warranted and represented by Defendant.

24

101.    As a direct and proximate result of Defendant's conduct, Plaintiff and the Class have suffered actual damages in that they have purchased Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals or other unnatural ingredients that do not conform to the products' labels, packaging, advertising, and statements.

102.    Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VI
### Unjust Enrichment on Behalf of Plaintiff and the Class

103.    Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

104.    Substantial benefits have been conferred on Defendant by Plaintiff and the Class through their purchase of the Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

105.    Defendant either knew or should have known that the payments rendered by Plaintiff and the Class were given and made with the expectation that the Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under the circumstances.

106.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits and not return the value of payments made by Plaintiff and the Class.

107.    Plaintiff and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

108.     Plaintiff and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## COUNT VII
### Violation of California's Consumer Legal Remedies Act, California Civil Code, on behalf of Plaintiff and the California Sub-Class

109.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

110.     Plaintiff and each California Sub-Class member is a "consumer," as that term is defined in California Civil Code section 1761(d).

111.     The Baby Foods are "goods," as that term is defined in California Civil Code section 1761(a).

112.     Defendant is a "person" as that term is defined in California Civil Code section 1761(c).

113.     Plaintiff and each proposed California Sub-Class member's purchase of Defendant's products constituted a "transaction," as that term is defined in California Civil Code section 1761(e).

114.     Defendant's conduct alleged herein violated the following provisions of California's Consumer Legal Remedies Act (the "CLRA"):

A. California Civil Code section 1770(a)(5), by negligently, recklessly, and/or intentionally representing that the Baby Foods are:

    i.      Natural;

    ii.     Appropriate for certain "Stage[s]" of babies; and

    iii.    "Real food for babies."

B. California Civil Code section 1770(a)(7), by negligently, recklessly, and/or intentionally misrepresenting that the Baby Foods were of a particular standard, quality, or grade, when they were of another;

26

C. California Civil Code section 1770(a)(9), by negligently, recklessly, and/or intentionally advertising the Baby Foods with intent not to sell them as advertised; and

D. California Civil Code section 1770(a)(16) by representing that the Baby Foods have been supplied in accordance with previous representations when they have not.

115. In accordance with CLRA section 1782(d), Plaintiff and the California Sub-Class are entitled, under CLRA section 1780, to recover and obtain the following relief for Defendant's violation of CLRA sections 1770(a)(5), (7), (9), and (16):

A. Restitution of property under CLRA section 1780(a)(1);

B. Any other relief the Court deems proper under CLRA section 1780(a)(5).

116. As a direct and proximate result of these violations, Plaintiff and the California Sub-Class have been harmed, and that harm will continue unless Defendant is enjoined from using the misleading marketing described herein in any manner in connection with the advertising and sale of the Baby Foods.

117. Plaintiff seeks an award of attorneys' fees pursuant to, inter alia, California Civil Code section 1780(e) and California Code of Civil Procedure section 1021.5.

## COUNT VIII
### Violation of California's False Advertising Law, California Business & Professions Code § 17500, *et seq.,* on Behalf of Plaintiff and the California Sub-Class

118. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

119. California's False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading." Cal. Bus. & Prof. Code § 17500.

120.     As set forth herein, Defendant's claims that the Baby Foods are natural, nutritious, quality, pure, healthy, and safe for consumption by babies are literally false and likely to deceive the public.

121.     Defendant's claims that the Baby Foods are natural, nutritious, superior quality, pure, healthy, and safe for consumption by babies are untrue and misleading, as is failing to disclose the presence or risk of heavy metals in the Baby Foods.

122.     Defendant knew, or reasonably should have known, that all these claims were untrue or misleading.

123.     Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if they can be assured that, so long as the Baby Foods are, as advertised, natural, nutritious, superior, quality, pure, healthy, and safe for consumption and do not contain heavy metals or any other ingredients or contaminants that do not conform to the packaging claims.

124.     Plaintiff and members of the California Sub-Class are entitled to injunctive and equitable relief, and restitution in the amount they spend on the Baby Foods.

**COUNT IX**
**Violation of California's False Advertising Law, California Business & Professions Code § 17200, *et seq.,* on Behalf of Plaintiff and the California Sub-Class**

125.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

126.     The Unfair Competition Law prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

127.     Defendant's statements that the Baby Foods are nutritious, superior quality, pure, natural, healthy, and safe for consumption by babies are literally false and likely to deceive the public,

as is Defendant's failing to make any mention of the presence or risk of heavy metals in the Baby Foods.

128.    Defendant has advertised the Baby Foods with false or misleading claims, such that Defendant's actions as alleged herein violate at least the following laws:

A.  The CLRA, California Business & Professions Code sections 1750, *et seq.*; and

B.  The False Advertising Law, California Business & Professions Code sections 17500, *et seq.*

129.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

130.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is also unfair because it violates public policy as declared by specific constitutional, statutory, or regulatory provisions, including, but not limited to, the False Advertising Law and the CLRA.

131.    Defendant's conduct with respect to the labeling, packaging, advertising, marketing, and sale of the Baby Foods is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves can reasonably avoid.

132.    In accordance with California Business & Professions Code section 17203, Plaintiff and the California Sub-Class seek an order enjoining Defendant from continuing to conduct business through fraudulent and unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

133.     On behalf of herself and the California Sub-Class, Plaintiff also seeks an order for the restitution of all monies from the sale of the Baby Foods, which were unjustly acquired through acts of fraudulent, unfair, or unlawful competition.

## COUNT X
**Violation of New Jersey's Consumer Fraud Act for Fraud in Connection with Sale or Advertisement of Merchandise, N.J. Stat. Ann. § 56:8-1, *et seq.*, on Behalf of Plaintiff and the New Jersey Sub-Class**

134.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

135.     New Jersey's Consumer Fraud Act prohibits the "act, use or employment by any person of unconscionable commercial practice, deceptive, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[.]" N.J. Stat. Ann. § 56:8-2.

136.     Defendant's representations related to the Baby Foods, as described herein, are advertisements as defined by N.J. Stat. Ann. § 56:8-1(a).

137.     The Baby Foods sold by Defendant are merchandise as defined by N.J. Stat. Ann. § 56:8-1(c).

138.     Defendant is a person as defined by N.J. Stat. Ann. § 56:8-1(d).

139.     As set forth herein, Defendant's claims that the Baby Foods are natural, nutritious, quality, pure, healthy, and safe for consumption by babies are literally false and likely to deceive the public.

140.     Defendant's claims that the Baby Foods are natural, nutritious, superior quality, pure, healthy, and safe for consumption by babies are true and misleading, as is failing to disclose the presence or risk of heavy metals in the Baby Foods.

141.    Defendant knew, or reasonably should have known, that all these claims were untrue or misleading.

142.    Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary, especially given Plaintiff's desire to purchase these products in the future if she can be assured that the Baby Foods are, as advertised, natural, nutritious, superior, quality, pure, healthy, and safe for consumption and that they do not contain heavy metals or any other ingredients or contaminants that do not conform to the packaging claims.

143.    Plaintiff and members of the New Jersey Sub-Class are entitled to and seek:

    A.  Injunctive and equitable relief, pursuant to N.J. Stat. Ann. § 56:8-159(a);

    B.  Actual damages, pursuant to N.J. Stat. Ann. § 56:8-159(b); and

    C.  Treble damages, costs, and attorneys' fees, pursuant to N.J. Stat. Ann. § 56:8-19.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Baby Foods until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.    An order enjoining Defendant from selling the Baby Foods in any manner or suggestion implying that they are healthy, natural, and safe for consumption;

D.    An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.      An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from containing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.      An order requiring Defendant to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising, or a violation of law, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay all actual damages permitted under the counts alleged herein;

I.      An order requiring Defendant to pay punitive damages on any count so allowable;

J.      An order awarding attorneys' fees and costs, including the costs of pre-suit investigation, to Plaintiff and the Class; and

K.      An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:  February 18, 2021

By:     **s/ Jonathan Tycko**
Jonathan K. Tycko Bar Number: 517275
Hassan A. Zavareei (*pro hac vice* to be filed)
Allison W. Parr (*pro hac vice* to be filed)
**TYCKO & ZAVAREEI LLP**
1828 L Street, NW Suite 1000
Washington, DC 20036
Telephone: (202) 973-0900
Facsimile: (202) 973-0950
jtycko@tzlegal.com
hzavareei@tzlegal.com
aparr@tzlegal.com

Annick M. Persinger (*pro hac vice* to be filed)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, CA 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
apersinger@tzlegal.com

*Counsel for Plaintiff and the Putative Class*